IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ADOLFO MARQUEZ, | : | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | : | CIVIL NO. 10-0463 (JBS) |
| v. | : |  |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | : | **OPINION** |
| Defendant. | : |  |

APPEARANCES:

Robert A. Petruzzelli, Esquire
Jacobs, Schwalbe & Petruzzelli, P.C.
10 Melrose Avenue - Suite 10
Cherry Hill, NJ 08003
    Counsel for Plaintiff

Paul J. Fishman
United States Attorney
    By:  Andreea L. Lechleitner
        Special Assistant U.S. Attorney
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278
    Counsel for Defendant

**SIMANDLE**, District Judge:

# I.   INTRODUCTION

This matter comes before the Court pursuant to § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying the application

of Mr. Adolfo Marquez ("Plaintiff"), for Disability Insurance Benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-434.

This Court must decide: 1) whether there is substantial evidence to support the Administrative Law Judge's ("ALJ") determination that Plaintiff's non-exertional (psychological) impairments were non-severe; and if so, 2) whether the ALJ erred by not considering Plaintiff's non-severe psychological impairment in his residual functional capacity assessment.  For the reasons explained below, this Court finds that substantial evidence supports the ALJ's determination of non-severe non-exertional impairment and that the ALJ adequately considered Plaintiff's non-severe psychological impairment in his determination of Plaintiff's residual functional capacity. Consequently, this Court will affirm the decision of the ALJ.

## II.  BACKGROUND

### A.  Procedural History

On November 14, 2006, Plaintiff filed an application for Social Security Disability Insurance Benefits (DIB), alleging a disability onset date of July 7, 2006 (R. at 11), due to neck and back injuries that arose out of falling from a ladder while at work.  (R. at 33.)  The Social Security Administration (SSA) denied Plaintiff's claim initially and on reconsideration.  (Id.)

2

Plaintiff subsequently filed a Request for an Administrative Hearing on June 4, 2007 (R. at 71), which was held before ALJ Mark Barrett on September 18, 2008.  (R. at 21-57.)  The ALJ issued a denial of benefits on October 15, 2008.  (R. at 20.)

The ALJ found that Plaintiff suffered from a severe physical impairment of the back and a non-severe psychological impairment. Plaintiff's physical impairment was degenerative disc disease of the lumbar spine.  (R. at 13-14.)  However, the ALJ concluded that Plaintiff: 1) did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; and 2) based on the Medical-Vocational Guidelines ("grids"), Plaintiff had the residual functional capacity to a) lift ten pounds regularly, b) lift twenty pounds on occasion, c) to stand or walk for six hours in an eight hour work day, and d) sit for six hours in an eight hour work day.  (R. at 14.)

Plaintiff then requested a review by the Appeals Council, which was denied on December 18, 2009.  (R. at 1-4.)  Thereafter, on May 26, 2010, Plaintiff filed the present action urging this Court to reverse the decision of the ALJ.

**B.   Statement of Facts**

1.   <u>Plaintiff's Work and Personal History</u>

Plaintiff is a resident of Newtonville, New Jersey and was 45 years old at the time of his Administrative Hearing.  (R. at

3

27.)  He has a high school diploma and can speak both English and Spanish, but cannot read or write.  (R. at 28.)  Additionally, Plaintiff has a valid driver's license and drives his sister's Oldsmobile.  (R. at 28-29.)  His wife passed away in 1986 and he is the father of a child (presumably with another woman) who, at the time of Plaintiff's Administrative Hearing, was seventeen years old.  (R. at 27-28.)

Plaintiff last worked in 2006 at Reveilles Remodeling (Reveilles) where he performed "hard labor:" laid sheetrock, painted, installed linoleum flooring, and restored homes that had been destroyed by fires.  (R. at 30-31.)  Plaintiff stopped working after he fell from a ladder while on the job at Reveilles on July 7, 2006.  (R. at 33.)  He suffered severe back and neck pain, went to the emergency room, and was eventually given medical treatment at Cooper University Hospital.  (Id.)  Later in 2006, he underwent an operation where a surgeon fused his back together.  (R. at 47-48.) Plaintiff's physical pain persisted in 2007 and he reported that it continued even on the day of his Administrative Hearing.  (R. at 34.)  Ever since his work-related injury, he has been unemployed and getting financial assistance from his mother.  (Id.)

Before working for Reveilles, Plaintiff drove forklifts for Gillespie of Vineland (R. at 36), lifted approximately one hundred pounds of precast forms that he made for Paris Stone (R.

at 37), and worked construction for various other companies.  (R. at 37-41.) However, after suffering from his work-related injury, Plaintiff testified that lifting even a gallon of milk was painful and that he would have difficulty lifting his cane if he were to drop it.  (R. at 44-45.)  Moreover, Plaintiff has intense difficulty climbing the two steps required to enter the house he lives in.  (R. at 55.)  He also testified that he cannot live with his girlfriend because he cannot make it up her staircase, which contains approximately thirteen steps.  (Id.)

Furthermore, Plaintiff stated that he went for physical therapy for approximately five months and had pain management treatments sometime during 2007.  (R. at 49.)  Since his temporary worker's compensation benefits have been terminated, he has not had ongoing, regular appointments with doctors.  (R. at 50.)[1]  Consequently, Plaintiff goes to emergency rooms for prescription drugs to alleviate the pain that he reportedly experiences throughout his neck and back.  (R. at 45-46.)

At one point, Plaintiff used "street drugs," such as powder cocaine, to cope with what he called "depression," which resulted from the combination of his physical pain and mental frustration concerning the termination of his worker's compensation benefits. (R. at 51-53.)  Moreover, in the past, he has been diagnosed as

---

[1] Plaintiff testified that his lawyer was litigating his worker's compensation claim at the time in order to secure permanent worker's compensation disability benefits.  (R. at 35.)

suffering from an "adjustment disorder with mixed anxiety and a
depressed mood." (R. at 506).  However, Plaintiff has not
received any medical treatment regarding a mental disorder.  (R.
at 13.)

    2.  <u>Medical Reports</u>

Plaintiff submitted medical and psychiatric reports from
several physicians and psychologists.  Relevant to the present
appeal are the psychological reports submitted by Renee Levin,
Ph.D., Edward Tobe, D.O., and Howard Adelman, Ph.D.

Plaintiff met with Dr. Levin once on August 28, 2007, based
on the recommendation of his treating physician, as part of the
process for determining whether or not a spinal cord stimulator
trial ought to be conducted.  (R. at 384.)  During this
appointment, Dr. Levin documented Plaintiff's history of physical
pain, the current activities he is able to perform, and gave her
opinion regarding his overall mental status.  (R. at 384-387.)
Dr. Levin concluded that Plaintiff suffered from a depressed
mood, but did not diagnose him as clinically depressed.  (R. at
385.)  Her report suggests that Plaintiff is having trouble
coping with the chronic pain throughout his body and the
limitations on his lifestyle.  (R. at 386).

Dr. Levin further explained that she believed that Plaintiff
seemed "irritable" and had trouble emotionally coping with his
physical impairment.  (<u>Id.</u>)  She stated that Plaintiff believes

6

that he is "worthless" and spends many days crying, but does not
have suicidal tendencies.  (Id.)  Ultimately, she concluded that
the spinal cord stimulation would not be advisable "from a
psychological standpoint" due to what appeared to be Plaintiff's
overall resistance to it.  (Id.)

Plaintiff had one appointment with Dr. Tobe on August 22,
2008.  His report comes in the form of a letter that he sent
directly to Plaintiff's worker's compensation attorney.  (R. at
532-534.)  In that letter, Dr. Tobe discusses Plaintiff's
psychological status.  Dr. Tobe mentions that Plaintiff
previously had a psychological evaluation performed by Dr.
Adelman.  (R. at 532.)  However, Dr. Tobe asserted that he did
not "have the impression that it was psychological treatment."
(R. at 533.)  Also, Dr. Tobe opined that Plaintiff appeared to
"externalize conflict," was afflicted by "low self-esteem," and
"presents with a mixed anxiety and depression secondary to
chronic pain" that impacts his quality of life.  (R. at 533-534.)

Plaintiff was psychologically evaluated by Howard Adelman,
Ph.D., on January 18, 2001 and a report was drafted three days
later.  (R. at  503.)  This evaluation occurred approximately
five years before the onset date of Plaintiff's alleged
disability.  (R. at 503-507.)  In the evaluation, Dr. Adelman
noted that Plaintiff was involved in a car accident, which
occurred when a car that Plaintiff was driving "was struck by a

7

brick that was holding down metal on a trailer being pulled by a pickup truck." (R. at 503.) The windshield shattered and the brick struck Plaintiff in the chin. (Id.)

Much of Dr. Adelman's evaluation deals with Plaintiff's mental status after the time of this car accident. (R. at 504-505.) According to Dr. Adelman's evaluation, Plaintiff's "affect was depressed and anxious." (R. at 504.) Also, while his long-term memory appeared intact, his short-term memory seemed to have been "somewhat impaired." (Id.) Additionally, the evaluation indicated that Plaintiff reported constant nightmares and trouble staying asleep. (R. at 505.) Dr. Adelman also notes that Plaintiff reported flashbacks that conjured up images of his car accident. (R. at 506.)

At the culmination of his report, Dr. Adelman diagnosed Plaintiff with an "Adjustment Disorder with Mixed Anxiety and Depressed Mood" and noted that psychotherapy could help diminish Plaintiff's overall pain. (Id.) This therapy would have included "stress management" and "self regulation skill development." (Id.) However, Plaintiff never went for psychotherapy treatment or stress management. Moreover, Plaintiff never met with Dr. Adelman subsequent to January 18, 2001, and Dr. Adelman has not evaluated Plaintiff after the onset date of his alleged disability in 2006.

3.   <u>The ALJ's Findings</u>

Upon reviewing the relevant law, ALJ Barrett determined that Plaintiff met the insured requirements of the Social Security Act through September 30, 2007.  (R. at 13.)  He then proceeded to follow the five-step analysis, as laid out in 20 C.F.R. § 404.1520, in order to determine whether Plaintiff was "disabled" or "not disabled," as set forth in the Act. (<u>Id.</u>)

In step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 7, 2006, the onset date of the alleged disability.  (<u>Id.</u>)

In step two, the ALJ found that Plaintiff suffered from a severe physical impairment: degenerative disc disease of the lumbar spine and a non-severe psychological impairment.  (<u>Id.</u>)[2]

In step three, considering only Plaintiff's severe impairment, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 14.)  After step three, the ALJ calculated Plaintiff's residual functional capacity ("RFC").  The ALJ concluded that Plaintiff had the RFC to lift and/or carry ten

---

[2] The ALJ also noted that medical evidence in the record indicated that Plaintiff suffered from physical and psychological pain.  However, since Plaintiff has not received any treatment regarding a psychological disorder and does not have a "medically determinable impairment" that causes more than "mild" limitations, the ALJ found that Plaintiff suffered from a non-severe psychological impairment.  (R. at 13-14.)

pounds frequently and twenty pounds occasionally.  (Id.)  The ALJ did not explicitly state whether he considered evidence related to Plaintiff's non-severe psychological impairment in his RFC calculation.

In step four, based on this RFC calculation, the ALJ found that Plaintiff could not perform past relevant work.  (R. at 18-19.)  The ALJ explained that Plaintiff had previously served as a laborer and performed tasks that required heavy lifting and physical exertion, which Plaintiff is unable to perform after his back injury.  (Id.)

Lastly, in step five, considering Plaintiff's age and the calculated RFC, the ALJ concluded that there are jobs that exist "in significant numbers in the national economy" that Plaintiff can perform.  (Id.)  In arriving at this finding, the ALJ considered only the Medical-Vocational Rules based on his assessment of Plaintiff's: 1) RFC "for the full range of light work" that he is still able to perform, 2) age, 3) level of education, and 4) work experience.  (Id.)  The ALJ did not, however, consider Plaintiff's psychological impairment at this stage or request testimony from a vocational expert.  Ultimately, the ALJ concluded that Plaintiff was "not disabled" under 42 U.S.C. § 416(I) or § 423(d) of the Social Security Act and denied his application for Disability Insurance Benefits.  (R. at 20.)

10

## III. DISCUSSION

### A.   How Disability is Determined

#### 1.   Disability Defined

The Social Security Act defines "disability" for purposes of Plaintiff's entitlement to benefits as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).  Under § 1382c(a)(3)(B), a claimant qualifies as disabled:

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner of Social Security has promulgated regulations that help determine whether an individual suffered from a disability for the purposes of receiving disability insurance.  See 20 C.F.R. § 404.1521.  These regulations call for the application of the five-step sequential analysis applied by the ALJ in the instant case.  This five-step process is

11

summarized as follows:

1.  If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2.  If the climant does not suffer from a "severe impairment," he will be found "not disabled."

3.  If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4.  If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5.  Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education and past work experience to determine whether or not he is capable of performing other work which exists in the national economy.  If he is incapable, a finding of disability will be entered.  On the other hand, if the claimant can perform other work, he will be found not to be disabled.

20 C.F.R. § 404.1520(b)-(f).  Entitlement to disability benefits is dependent upon a finding that the claimant is incapable of performing some other type of work in the national economy.

2.  Residual Functional Capacity

The RFC assessment is used to determine whether one can perform past relevant work or, if not, other work.  It is first made before step four of the sequential analysis.  20 C.F.R. §

404.1545(a)(5)(I).  The ALJ is required to consider both physical and mental abilities when making this determination.  20 C.F.R. § 404.1545(b)-(c).  If one suffers from more than one impairment, the ALJ must consider all medically determinable impairments that he is aware of, even those that are considered non-severe.  20 C.F.R. § 404.1545(a)(2).  Furthermore, if one does not have an impairment that meets or equals those of a listed impairment, the "total limiting effects" of all impairments, whether severe or non-severe, must also be considered.  20 C.F.R. § 404.1545(e).

### B.    Standard of Review

#### 1.    Generally

A reviewing court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied, 507 U.S. 924 (1993). "Substantial evidence" means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  This deferential inquiry is not whether the reviewing court would have made the same determination, but, rather, whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).  Thus, substantial evidence may be slightly less than a

13

preponderance.  See Hanusiewicz v. Bowen, 678 F. Supp. 474, 476 (D.N.J. 1988).

Some types of evidence will not be "substantial."  For instance:

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence - particularly certain types of evidence (e.g. that offered by treating physicians) - or if it really constitutes not evidence but mere conclusion.

Wallace v. Sec'y of Health and Human Serv., 722 F.2d 1150, 1153 (3d Cir. 1983) (citing Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)).  Additionally, evidence that is merely cumulative to other evidence in the record is not substantial.  See Johnson v. Barnhart, Civ. No. 04-5034, slip op. 2005 WL 1793529 at *5 (E.D. Pa. July 27, 2005).

The reviewing court, however, does have a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 70 (3d Cir. 1984).  In order to do so, "a court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Sec'y of Health and Human Serv., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951))).

14

2.   The ALJ's Duty to Develop the Record and to Analyze Evidence

The ALJ has a duty "to develop the record fully and fairly." Thompson v. Sullivan, 878 F.2d 1108, 1110 (8th Cir. 1989).  When the ALJ fails to consider all relevant regulations in making a determination of substantial gainful activity, the case must be remanded.  Coulter v. Weinberger, 527 F.2d 224, 231 (3d Cir. 1975).  Additionally, the ALJ must set out a specific factual basis for each finding.  Baerga v. Richardson, 500 F.2d 309 (3d Cir. 1974), cert. denied, 420 U.S. 931 (1975).  Simply referring to the "record" is insufficient.  Abshire v. Bowen, 662 F. Sup. 8 (E.D. Pa. 1986).  The ALJ must analyze all of the evidence in the record and provide an adequate explanation for disregarding evidence.  Adorno v. Shalala, 40 F.3d 43 (3d Cir. 1994).

**C.  Plaintiff's Arguments Concerning the ALJ's Determination of Non-Severe Psychological Impairment**

Plaintiff argues that the ALJ erred at step two by not considering all of the relevant medical evidence because he did not mention Dr. Adelman's 2001 report.  Plaintiff further argues that the ALJ dismissed the psychological opinions of Dr. Tobe and Dr. Levin "simply because he disagreed with them."  (Pl's Br. at 9.)  The Commissioner rejoins that while the ALJ may have in fact not addressed some of the evidence, it was not error for him to do so because it does not offer any insight into Plaintiff's "ability to function during the relevant period" and is not

15

probative.  (Def.'s Br. at 6.)  This Court agrees that the ALJ did not ignore medically relevant evidence when finding that Plaintiff suffered from a non-severe psychological impairment.

The ALJ noted that there was evidence in the record indicating that Plaintiff either suffered from a pain disorder associated with psychological factors or mixed anxiety and depression secondary to chronic pain.  (R. at 13.)  The ALJ further noted that much of the evidence proffered by Dr. Tobe and Dr. Levin seemed to have been based on Plaintiff's subjective complaints, not objective findings.  (Id.)  After considering these reports, he concluded that sufficient objective evidence existed in order to determine that Plaintiff had a psychological impairment, but it was non-severe.  (R. at 13-14.)

A psychological impairment will be considered non-severe if it is one that does not significantly limit one's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1521a; Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003).  However, having more than a mild limitation on one's: 1) activities of daily living; 2) social functioning; or 3) concentration, persistence, or pace may constitute a severe impairment.  20 C.F.R. § 404.1520a(d)(1).

The ALJ based his determination that Plaintiff's psychological impairment was non-severe on the objective evidence highlighted in the psychologists' reports.  In his report, Dr.

16

Tobe made several objective observations.  He observed that
Plaintiff tended to externalize conflict, did not seem to
understand his role in problems that emerged, appeared
apprehensive, and seemed to suffer from a loss of self-esteem.
(R. at 533.)[3]

Additionally, the ALJ based his determination on Dr. Levin's
report.  Although Dr. Levin makes a "diagnostic impression" that
Plaintiff is suffering from a depressed mood and an adjustment
disorder, her report focuses on the self-reported, subjective
statements Plaintiff made.  When evaluating the existence of a
disability, subjective complaints of pain "do not in themselves
constitute disability."  Green v. Schweiker, 749 F.2d 1066, 1070
(3d Cir. 1984).  They must be accompanied by medical signs and
laboratory findings which show that the claimant has a medical
impairment which could reasonably be expected to produce the pain
or other symptoms alleged.  See Bittel v. Richardson, 441 F.2d
1193, 1195 (3d Cir. 1971).  Similarly, where a psychiatric
impairment is claimed, it must be supported by reliable evidence
sufficing to support the diagnosis and the conclusion that the

---

[3] Dr. Tobe also stated that Plaintiff "presents with a mixed
anxiety and depression" (R. at 534) and that Plaintiff's symptoms
"materially impair the ordinary pursuits" of his life.  (Id.)
However, Dr. Tobe did not state any objective evidence underlying
these conclusions.  Thus, because the Court interprets these
statements as "mere conclusion[s]" rather than evidence, the
Court need not consider them here.  Wallace v. Sec'y of Health &
Human Svcs., 722 F.2d 1150, 1153 (3d Cir. 1983).

condition significantly limits the claimant's ability to perform basic work activities, as explained above.

Due to the lack of objective evidence in Dr. Levin's report, the ALJ was not bound to accept unquestioningly the credibility of Plaintiff's self-reporting. Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Thus, the ALJ did not err when determining that the evidence proffered in Dr. Levin's report did not amount to more than a non-severe psychological impairment. Moreover, since the ALJ did in fact weigh the evidence brought to bear by Dr. Tobe's report, he did not ignore any relevant medical evidence at step two.

Plaintiff also argues that the ALJ erred by not considering, or even mentioning, Dr. Adelman's 2001 psychological evaluation. Whatever Plaintiff's mental status was in 2001, it did not impair his capacity for gainful employment, if at all, until 2006, as alleged herein. Moreover, Dr. Adelman's evidence is merely cumulative of evidence that the ALJ already considered. All of the objectively relevant evidence included in the evaluation can also be found within Dr. Tobe's report.[4]  As such, mentioning Dr.

---

[4] To the extent that there may be any difference between the objective evidence contained within Dr. Adelman's evaluation and Dr. Tobe's report, such disparity arises only from Dr. Adelman's discussion of short-term memory loss.  To that end, Dr. Adelman's evaluation occurred over five years prior to the onset date of Plaintiff's alleged disability, and the subsequent reports and evaluations in the record do not contain any evidence of short-term memory loss affecting Plaintiff after the onset date of his disability.  Thus, this sole difference between the two reports

Adelman's evaluation is unnecessary because it does not contain any additional, relevant medical evidence.  Therefore, the ALJ did not err at step two of the five step analysis.

**D.    The ALJ's RFC Determination**

This Court must now consider whether the ALJ erred before step four when determining Plaintiff's RFC.  Plaintiff argues that the ALJ failed to properly consider his non-severe psychological impairment.  The Commissioner does not respond to this allegation.  Pursuant to 20 C.F.R. § 404.1545(b)-(c), the ALJ must consider both physical and mental abilities when making an RFC determination.  Also, the ALJ is required to consider all medically determinable impairments that he is aware of, even those that are considered non-severe.  20 C.F.R. § 404.1545(a)(2).  This Court has a duty to review the record in its totality.  <u>Daring</u>, 727 F.2d at 70.

When reviewing a decision to deny benefits, "the district court's role is limited to determining whether the Commissioner properly applied the appropriate legal standards" as well as "whether the Commissioner's findings of fact are supported by 'substantial evidence.'"  <u>Terwilliger v. Chater</u>, 945 F. Supp. 836, 839 (E.D. Pa. 1996).  Furthermore, the Commissioner is "bound to consider all of the evidence."  <u>Gallo v. Chater</u>, No.

---

does not provide guidance regarding Plaintiff's ability to
function in a work setting during the relevant period.

94-2181-JWL, 1995 WL 462223, at *1 (D. Kan. 1995).  When
determining whether the Commissioner has done this, "the court
need not find explicit references to each piece of evidence if
the whole of the record supports" the conclusion.  <u>Id.</u>

The ALJ went into admirable detail when assessing
Plaintiff's impairments and determining his RFC.  Consistent with
the ALJ's obligation, his determination was "accompanied by a
clear and satisfactory explication of the basis on which it
rests."  <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981).
Although the ALJ did not explicitly discuss Plaintiff's non-
severe psychological impairment in this particular section, he
made reference to it in earlier portions of his opinion,
indicating that he had in fact considered it.[5]

_____

[5] The ALJ directly quotes Dr. Levin's psychological report
in his discussion of the severity of Plaintiff's impairments and
notes that her report appears to have only documented Plaintiff's
subjective complaints instead of her own objective findings.  (R.
at 13.)  Furthermore, the ALJ explained that, after reviewing the
record as a whole, Plaintiff's psychological impairment did not
cause limitations on Plaintiff's ability to maintain social
functioning, concentration, or persistence.  (<u>Id.</u>)  Moreover, the
ALJ noted that Plaintiff's psychological impairment did not limit
Plaintiff's ability to perform activities associated with daily
living.  (<u>Id.</u>)  Subsequently, in the ALJ's analysis of
Plaintiff's RFC, he makes reference to this prior discussion of
Plaintiff's symptoms and outlines the two-step process that he
followed in order to determine Plaintiff's RFC.  (<u>Id.</u> at 14.)
The ALJ found that Plaintiff's psychological impairment was not
supported by medically acceptable laboratory or diagnostic
techniques and that the impairment was not sufficiently intense
to limit Plaintiff's ability to perform basic work activities.
(<u>Id.</u>)  The ALJ based this finding on the lack of objective
medical evidence contained in the record and Plaintiff's overall
lack of credibility.  (<u>Id.</u>)  After discussing Plaintiff's

Moreover, after weighing all of the relevant medical and psychological evidence, the ALJ expressed reservations regarding Plaintiff's credibility.  The ALJ noted that Plaintiff's functional capacity evaluation indicated "moderate symptom magnification" and that Plaintiff put forth only "sub-maximum effort."  (R. at 15.)  The ALJ also explained that Plaintiff failed a drug test and was suspected of tampering with a second drug screening.  (Id. at 16.)  Similarly, the record further reveals that Plaintiff denied using cocaine, but later, at his hearing, admitted to using it.  (Id. at 17.)  After taking all of this into account, as well as the fact that Plaintiff did not undergo psychological treatment, the ALJ determined that there were problems with Plaintiff's credibility and that Plaintiff tended to magnify or exaggerate the severity of his exertional and non-exertional impairments.

This Court declines to substitute its own determination of credibility for that of the ALJ, given that the ALJ had the opportunity to observe Plaintiff first-hand.  See Wier v. Heckler, 734 F.2d 955, 962 (3d Cir. 1984) (recognizing that great deference is given to the ALJ's determination of credibility).

---

physical impairment, the ALJ again referenced Plaintiff's psychological impairment.  He explained that Dr. Tobe's report differed significantly from the medical reports of Plaintiff's treating physicians, who "noted a lack of ongoing neurological findings."  (Id. at 16.)  Accordingly, based on the ALJ's detailed analysis, it is clear that he considered Plaintiff's psychological impairment when determining Plaintiff's RFC.

It is within the ALJ's discretion "'to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant.'"  Brown v. Schweiker, 562 F. Supp. 284, 287 (E.D. Pa. 1983) (quoting Bolton v. Sec'y of Health & Human Servs., 504 F. Supp. 288, 291 (E.D. N.Y. 1980)). Accordingly, based on the totality of the medical and psychological evidence presented in the record, this Court finds that the ALJ did not err when determining Plaintiff's RFC.

### E.   Plaintiff's Remaining Arguments

Plaintiff contends that at step five of the analysis, the ALJ avoided following Sykes v. Apfel, 228 F.3d 259 (3d Cir. 2000) by determining that Plaintiff's psychological impairment was non-severe.  Although Plaintiff rightly states the general proposition that the Commissioner cannot rely exclusively on the grids when a claimant has both exertional and non-exertional impairments that are severe, the case is inapplicable to a case where the claimant suffers only from a non-severe psychological impairment.  Sykes, 228 F.3d at 268.  Since the Court has affirmed the ALJ's determination that Plaintiff's psychological impairment was not severe, the Court will decline to apply Sykes to the ALJ's step-five analysis.  Additionally, Plaintiff requests summary judgment in his favor rather than remanding to the ALJ.  However, since this Court has determined that the ALJ

22

did not err, Plaintiff's argument fails.

## IV. CONCLUSION

For the reasons stated above, the Commissioner's decision denying Plaintiff's application for Disability Insurance Benefits is affirmed.  The accompanying order will be entered.


**March 4, 2011**                        **s/ Jerome B. Simandle**
DATE                                      JEROME B. SIMANDLE
                                          United States District Judge